**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| **KOCHA HAZELTON,**        ) | |
|                               ) | |
|     **Plaintiff,**            ) | |
|                               ) | 4:24cv1479-JD |
| **v.**                              ) | **CASE NO.:** _____ |
|                               ) | |
|                               ) | |
| **INSTANT BRANDS LLC**,      ) | |
| **INSTANT BRANDS, INC. and**      ) | |
| **CORELLE BRANDS, LLC,**      ) | |
|                               ) | |
|     **Defendants.**         ) | |

_____

Plaintiff, **KOCHA HAZELTON** , (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC**, and **ROGERS PATRICK WESTBROOK & BRICKMAN.** hereby submits the following Complaint and Demand for Jury Trial against **INSTANT BRANDS, LLC. INSTANT BRANDS, INC.** and **CORELLE BRANDS, LLC** (hereafter referred to as "Instant Brands Defendants" or "Defendants") alleges the following upon personal knowledge and belief, and investigation of counsel:

## **NATURE OF THE CASE**

1.     Instant Brands Defendants design, manufacture, market, import, distribute and sell a wide-range of consumer kitchen products, including the subject "Instant Pot DUO 8-Quart 7-in-1 Multi-Use Programmable Pressure Cooker" which specifically includes the model number IP-DUO60 V3 (referred to hereafter as "pressure cooker(s)" or "Subject Pressure Cooker") that is at issue in this case.

2.      Defendants tout the "safety"[1] of its pressure cookers, and states that they cannot be opened while in use. Despite Defendants' claims of "safety," they designed, manufactured, marketed, imported, distributed, and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to consumers.

3.      Specifically, said defects manifest themselves when, despite Defendants' statements, the lid of the pressure cooker is removable with built-up pressure, heat, and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families, and other bystanders. The Plaintiff in this case sustained serious and substantial bodily injuries and damages when the lid of the pressure cooker was able to be rotated, opened, or removed while the pressure cooker retained pressure.

4.      Defendants knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

5.      Defendants ignored and/or concealed its knowledge of these defects in its pressure cookers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

---

[1]   See, e.g. Instant Pot Duo User Manual, pgs. 4, 5, 9, 10.  A copy of the User Manual is attached hereto as "Exhibit A".

6.      As a direct and proximate result of Defendants' conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF KOCHA HAZELTON

7.      Plaintiff is a resident and citizen of the city of Florence, County of Florence, State of South Carolina.

8.      On or about July 26, 2020, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed us of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff.  The incident occurred as a result of the failure of the pressure cooker's supposed "Safety Mechanisms,"[2] which purport to keep the consumer safe while using the pressure cooker.  In addition, the incident occurred as a result of Defendants' failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## INSTANT BRANDS DEFENDANTS

9.      Defendants designed, manufactured, marketed, imported, distributed, and sold a variety of consumer kitchen products including pressure cookers, air fryers, and blenders, amongst others.

10.     Defendants boast that "cooking with Instant Brands is everyday magic,"[3] and that its products are "all designed to simplify the joys of home cooking, promote healthy lifestyles, and give you more time to enjoy great meals with the people you love."[4]

---

[2] *See* https://www.instanthome.com/support/instant/resources
[3] *See* https://www.instanthome.com/about-us
[4] *Id.*

11.     Instant Brands, LLC is an Illinois limited liability company with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515.

12.     Upon information and belief, Instant Brands, Inc. is a Delaware Corporation with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515.

13.     Corelle Brands, LLC is an Illinois limited liability company with its principal place of business at 3025 Highland Pkwy, Downers Grove, IL 60515.

14.     On June 12, 2023 Defendants commenced a Chapter 11 proceeding.  See In re Instant Brands Acquisition Holdings Inc., et al. (Bankr. S.D. Tex. Case No. 23-90716) (the "Bankruptcy Case"). On February 23, 2024 the Bankruptcy Court issued a Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Chapter 11 Plan of Reorganization of Instant Brands Acquisition Holdings Inc. and Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis at Dkt. No. 1146. Exhibit A to the Order, Article VII, section L states the following:

> Nothing herein (including Articles XI.B and XI.G) shall preclude Holders of Product Liability Claims from (1) naming a Reorganized Debtor as a nominal Defendants in an action brought in respect of a Product Liability Claim, thereby allowing, and solely to the extent required to enable, the named Reorganized Debtor to tender the applicable Product Liability Claim to the applicable Third-Party Indemnitor under all available and applicable Third-Party Indemnifications (as set forth in Article II.D), if any, as will be adjudicated by the Bankruptcy Court in connection with Confirmation unless otherwise consensually settled or resolved, or (2) otherwise pursuing their Claims against Insurers under all available and applicable Insurance Contracts; provided, that none of the Reorganized Debtors shall have any obligation to participate or assist in any action brought in pursuit of any Product Liability Claims or have any liability with respect to any Product Liability Claims. For the avoidance of doubt, all liabilities of the Debtors, the Debtors' Estates, or the Reorganized Debtors for any Product Liability Claims shall be discharged on the Effective Date in accordance with the Plan. To ease the burdens on the Reorganized Debtors, all Holders of Product Liability Claims may use any discovery previously taken in connection with any previous Product Liability Claim against the Debtors, and both the Debtors and the Reorganized Debtors waive any prior protective orders to the extent necessary to effectuate this paragraph (however, any prior confidentiality designations are expressly preserved and shall remain in effect). To the extent that a Product Liability Claim is not satisfied by an Insurer or Third-Party

Indemnitor, the Holder will be permitted to assert such Excess Product Liability Claim as a General Unsecured Claim (subject to prior compliance with the Bar Date Order). The Distribution Agent, the Litigation Trustee, or any Holder of a Product Liability Claim may seek estimation of any expected Excess Product Liability Claim, including for purposes of establishing an appropriate reserve in connection with any distributions from the Litigation Trust.

15.     This proceeding was initially commenced in the Bankruptcy Case by the filing of a Proof of Claim on October 4, 2023 and October 9, 2023 [Claim No. 0000010558 and 0000010375], respectively.  This action is being initiated now in this District Court solely to ensure satisfaction of the Plaintiff's applicable statute of limitation, but remains subject to the above cited Order in the Bankruptcy Case, and thus this action should be stayed until the conditions in paragraph 31(a) of such Order are satisfied.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

18.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants have sufficient minimum contacts with the State of South Carolina and intentionally availed themselves of the markets within South Carolina through the promotion, sale, marketing, and distribution of their products.

## FACTUAL BACKGROUND

19.     Defendants are engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers at issue in this litigation.

20.    Defendants aggressively warrant, market, advertise, and sell the pressure cookers as "simple-to-use, versatile and convenient"[5] and repeatedly boasts about its pressure cookers' purported "proven safety features."[6]

21.    For instance, the Defendants claims that the pressure cookers include a "Safety Lid Lock" which purportedly automatically locks the lid when the unit is pressurized "to prevent opening the cooker."[7]

22.    To further propagate its message, Defendants have used, and continue to utilize, numerous media outlets including, but not limited to, infomercials, social media websites such as YouTube, and third-party retailers.  For example, the following can be found on Defendants' YouTube webpage entitled "Getting to Know Your Knew Instant Pot IP-DUO":

    a.    "The first thing you need to know about your IP-DUO is that ***you don't need to be afraid of it***, as many people are afraid of stovetop pressure cookers."[8]

    b.    "With 10 safety features built in, you can use your Instant Pot with confidence, ***knowing that it is not going to explode***."[9]

    c.    "In addition, keep in mind that your Instant Pot operates at relatively low pressures of 11 to 12 psi or lower, depending on the pressure setting that you use."[10]

---

[5] *See* https://www.instanthome.com/product/instant-pot/duo-plus/6-quart-multi-use-pressure-cooker-v3

[6] *Id.*

[7] *See* "10 Safety Mechanisms- DUO, DUO PLUS, LUX, NOVA PLUS AND VIVA," https://www.instanthome.com/support/instant/resources (last accessed January 9, 2023).

[8] https://www.youtube.com/watch?v=w1RKj9E8TY0 (video with a runtime of 11:26) at 0:42-0:46 (last accessed January 9, 2023).

[9] *Id*. at 0:47 – 0:55.

[10] *Id*. at 0:56 – 1:08.  This apparently suggest that even if the lid is opened while the unit is still pressurized, it will not harm you.

23.    In a similar video entitled "Introducing Instant Pot IP-DUO series electric pressure cooker," spokesperson Laura Pazzaglia, founder of the website "Hip Pressure Cooking"[11] boasts of the pressure cooker's "10 safety features," stating that this "new model detects the position of the lid" and "once the lid is locked, and the contents are under pressure, *there's no way to open the pressure cooker*."[12]

24.    According to the User's Manual accompanying each individual unit sold, the pressure cookers possess a "Float Valve" which pops up and locks the lid of the cooker in place while the unit is pressurized, stating that "[a]s a safety feature, until the float valve drops down the lid is locked and cannot be opened,"[13] misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use.

25.    By reason of the forgoing acts or omissions, the above-named Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

26.    Plaintiff used the pressure cooker for its intended purpose of preparing meals for herself and/or her family and did so in a manner that was reasonable and foreseeable by the Defendants.

27.    However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendants in that it failed to properly function as to prevent the lid from being rotated, opened, or removed with normal force while the unit remained pressurized, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

---

[11] *See* https://www.hippressurecooking.com/ (last accessed January 9, 2023)
[12] https://www.youtube.com/watch?v=bVA2EqPf0s0 (video with a runtime of 8:30) (last accessed January 9, 2023).
[13] Instant Pot Duo Plus User's Manual, pg. 22.

28.    Defendants' pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

29.    Further, Defendants' representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

30.    Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

31.    Defendants knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public.  Nevertheless, Defendants continues to ignore and/or conceal their knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers, demonstrating a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiff and others like her.

32.    As a direct and proximate result of Defendants' intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries to Plaintiff.

33.    Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendants' pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY

34.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

35.    At all times relevant, there was in full force and effect certain statutes of the State of South Caroline pertaining to Sellers of Defective Products as set forth in Section 15-73-10 et seq. of the South Carolina Code Ann. (1976, as amended).

36.    Pursuant to S.C. Code § 15-73-10 et seq., Instant Brands Defendants are strictly liable in tort, irrespective of privity, for designing, manufacturing, warranting, marketing, importing, distributing, selling, and otherwise placing a defective and unreasonably dangerous product into the stream of commerce, which was the proximate cause of Plaintiff's injuries and damages.

37.    At all times relevant herein, Defendants was in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers to consumers, including the Subject Pressure Cooker.

38.    At the time they were designed, manufactured, warranted, marketed, imported, distributed, and sold by Instant Brands Defendants, the pressure cookers were defective in their design, manufacture and/or warnings and were unreasonably dangerous for their foreseeable uses.

39.    The Subject Pressure Cooker was expected to and did reach Plaintiff without undergoing any substantial changes or alterations in its condition.

40.    Plaintiff neither misused nor materially altered the Subject Pressure Cooker and, at the time of the incident complained of herein, the Subject Pressure Cooker was in the same or substantially similar condition as it was in at the time of sale.

9

41.    At all relevant times, including when the incident alleged herein occurred, the Subject Pressure Cooker was used by Plaintiff in an intended and/or foreseeable manner.

42.    As designed, manufactured, warranted, marketed, imported, distributed, and sold, the pressure cookers at issue were unreasonably dangerous and failed to perform in a manner reasonably expected in light of their intended design, nature, and function, because at the time they were sold or otherwise distributed by the Defendants they were in a condition (a) not contemplated by reasonable persons among those considered expected users or consumers of the pressure cookers; and (b) that was unreasonably dangerous to the expected user or consumer when used in a reasonably expectable way of handling or consumption.

43.    Further, a reasonable person would conclude that the possibility and seriousness of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

    a.    The pressure cookers designed, manufactured, sold, and supplied by Instant Brands Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

    b.    The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

    c.    Instant Brands Defendants failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

    d.    Instant Brands Defendants failed to warn and place adequate warnings and instructions on the pressure cookers;

    e.    Instant Brands Defendants failed to adequately test the pressure cookers; and

    f.    Instant Brands Defendants failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

44.    Plaintiff did not know at the time of her use of the Subject Pressure Cooker, nor at any time prior thereto, of the existence of the defects in the product.

45.    Instant Brands Defendants knew or should have known that its pressure cookers created high risk of unreasonable harm to Plaintiff and consumers alike.

46.    Despite the fact that Instant Brands Defendants knew or should have known that the pressure cooker's lid could be removed while the units were still pressurized, Defendants continued to market its pressure cookers to the general public (and continues to do so).

47.    As a direct, actual, and proximate result of Instant Brands Defendants' actions and omissions, Plaintiff suffered debilitating injuries, permanent scarring, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

48.    Wherefore, Plaintiff requests a judgment against Instant Brands Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

49.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

50.    The Subject Pressure Cooker was expected to and did reach Plaintiff without undergoing any substantial changes or alterations in its condition.

51.    Plaintiff neither misused nor materially altered the Subject Pressure Cooker and, at the time of the incident complained of herein, the Subject Pressure Cooker was in the same or substantially similar condition as it was in at the time of sale.

52.    Instant Brands Defendants owed a duty to Plaintiff and other users of their products to exercise due care in the sale and distribution of the pressure cookers at issue in this case.

11

53.     Instant Brands Defendants were negligent, careless, and reckless in the design, manufacture, advertising, warning, marketing, and sale of its pressure cookers in that, among other things, they:

    a.  Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

    b.  Placed an unsafe product into the stream of commerce;

    c.  Aggressively over-promoted and marketed its Pressure Cookers through television, social media, and other advertising outlets; and

    d.  Was otherwise careless or negligent.

54.     Plaintiff did not know at the time of her use of the Subject Pressure Cooker, nor at any time prior thereto, of the existence of the defects in the product.

55.     Despite the fact that Instant Brands Defendants knew or should have known that the pressure cooker's lid could be removed while the units were still pressurized, Defendants continued to market its pressure cookers to the general public (and continues to do so).

56.     As a direct, actual, and proximate result of Instant Brands Defendants' actions and omissions, Plaintiff suffered debilitating injuries, permanent scarring, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

57.     Wherefore, Plaintiff requests a judgment against Instant Brands Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## THIRD CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

58.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

59.     Under the South Carolina Uniform Commercial Code, when a seller makes an affirmation of fact or promise about its goods upon which the consumer relies, it creates an express warranty that those goods conform to that affirmation or promise. *See* S.C. Code Ann. § 36-2-313.

60.     Instant Brands Defendants are merchants and sellers with respect to the goods at issue, including the Subject Pressure Cooker.

61.     Instant Brands Defendants expressly warranted to consumers, including Plaintiff and her daughter, that pressure would not build in its pressure cookers unless and until the lid was shut correctly and was sealed.

62.     Instant Brands Defendants expressly warranted to consumers, including Plaintiff and her daughter, that once pressure increases in the pressure cooker, the lid cannot be opened.

63.     Defendants expressly warranted to consumers, including Plaintiff and her daughter, that the lid to the pressure cooker will not unlock until all the pressure is released from the pressure cooker.

64.     Defendants breached the express warranty to Plaintiff and her daughter as, unbeknownst to them: (a) the pressure cooker can become pressurized if the lid is not shut correctly and no seal is formed; (b) the lid to the pressure cooker can be removed or otherwise become detached while the pressure cooker is pressurized.

65.     Plaintiff did not know at the time of her use of the Subject Pressure Cooker, nor at any time prior thereto, of the existence of the defects in the product.

66.     As a direct, actual, and proximate result of Instant Brands Defendants' breach of its express warranties, Plaintiff suffered debilitating injuries, permanent scarring, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

13

67.     Wherefore, Plaintiff requests a judgment against Instant Brands Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTIES**

68.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

69.     Implied in every sale of goods in South Carolina are the implied warranties of merchantability and fitness for a particular purpose.  *See* S.C. Code Ann. §§ 36-2-314 and 36-2-315.

70.     Instant Brands Defendants are merchants with respect to the goods at issue, including the Subject Pressure Cooker.

71.     Instant Brands Defendants were sellers of the Subject Pressure Cooker and, thus, impliedly warranted that the Subject Pressure Cooker which it sold was fit for ordinary and foreseeable purposes and for the particular purpose for which it was sold.

72.     Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of these warranties.

73.     The Subject Pressure Cooker was expected to and did reach Plaintiff without undergoing any substantial changes or alterations in its condition.

74.     Plaintiff neither misused nor materially altered the Subject Pressure Cooker and, at the time of the incident complained of herein, the Subject Pressure Cooker was in the same or substantially similar condition as it was in at the time of sale.

14

75. Plaintiff made ordinary and foreseeable use of the Subject Pressure Cooker and Plaintiff relied upon the implied warranties given by Instant Brands Defendants.

76. Contrary to those implied warranties, Instant Brands Defendants' pressure cookers were not merchantable and fit for their ordinary purpose because they had the propensity to lead to serious personal injuries as described herein in this Complaint.

77. Plaintiff used the Subject Pressure Cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

78. Plaintiff did not know at the time of her use of the Subject Pressure Cooker, nor at any time prior thereto, of the existence of the defects in the product.

79. As a direct, actual, and proximate result of Instant Brands Defendants' breaches of warranties, Plaintiff suffered debilitating injuries, permanent scarring, medical expenses, loss of enjoyment of life, and past and future emotional and physical pain and suffering.

80. Wherefore, Plaintiff requests a judgment against Instant Brands Defendants for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**FIFTH CAUSE OF ACTION**
**<u>PUNITIVE DAMAGES</u>**

81. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

82. Instant Brands Defendants had a duty to refrain from willful and wanton acts, omissions and/or misconduct which would foreseeably expose Plaintiff to an unreasonable risk of harm and cause injury.

15

83.    Upon information and belief, Instant Brands Defendants breached its duties and committed one or more of the following acts or omissions amounting to willful and wanton misconduct, in that it acted with reckless disregard for the health, safety and well-being of Plaintiff and others similarly situated by:

    a.    Falsely representing and expressly warranting to its consumers, including Plaintiff, that the pressure cooker possessed and maintained a number of "safety features";

    b.    Knowingly subjecting its consumers to the risk of serious injury by designing, manufacturing, warranting, marketing, importing, distributing, and selling pressure cookers which it knew contained dangerous defects which allowed the lid to open while still pressurized;

    c.    Knowingly making misstatements and omissions about the pressure cookers' lid locking feature; and

    d.    Permitting its defective pressure cookers to remain on the market and in use by hundreds of thousands of consumers despite Defendants' knowledge of the defective and unreasonably dangerous condition of the pressure cookers.

84.    Instant Brands Defendants' conduct in knowingly permitting the defective pressure cookers to remain on the market and in use by hundreds of thousands of consumers despite Defendants' actual knowledge of the defective and unreasonably dangerous condition of the pressure cooker amounts to clear and convincing evidence that Defendants acted with willful and wonton misconduct, which was not the result of mistake of fact or law, honest error or judgment, mere negligence or other human failing.

85.    Instant Brands Defendants subjected other persons, including Plaintiff, to probable injury with an awareness of such impending danger and with heedless indifference to the consequences by knowingly permitting the defective pressure cookers to remain on the market and in use by hundreds of thousands of consumers despite Defendants' actual knowledge of the defective and unreasonably dangerous condition of the pressure cooker.

16

86.     As a result of Instant Brands Defendants' conscious disregard for the likely injurious consequences of their course of conduct, Plaintiff sustained injuries and damages entitling her to an award of punitive damages against Defendants.

## **PRAYER FOR RELIEF**

87.     WHEREFORE, Plaintiff prays as follows:

   a.  Judgment against Defendants;

   b.  For sums as actual and other compensatory damages, including pain and suffering and permanent impairment, in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court;

   c.  For exemplary and punitive damages against Defendants, in an amount as a jury may determine to halt such conduct;

   d.  For the costs of this suit, including attorney's fees; and

   e.  For such other and further relief to which she may be entitled, that this Honorable Court deems just and proper.

## **JURY DEMAND**

88.     Plaintiff hereby demands a trial by jury pursuant to Rule 23, SCRCP.

Dated: March 26, 2024

By: *s/Elizabeth Middleton Burke*
Elizabeth Middleton Burke (Fed. I.D. 7466)
Misty Black O'Neal (Fed. I.D. 12262)
**ROGERS PATRICK WESTBROOK & BRICKMAN**
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC 29464
Ph:       (843) 727-6500
Fax:      (843) 216-6509
bburke@rpwb.com
moneal@rpwb.com


*In association with*:

**JOHNSON BECKER, PLLC**

Adam J. Kress, Esq.  (MN #0397289)
*Pro Hac Vice to be filed*
Anna R. Rick, Esq. (MN #0401065)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800
(612) 436-1801 (f)
akress@johnsonbecker.com
arick@johnsonbecker.com


*Attorneys for Plaintiff*

18